# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 22-cv-1631

**SHARON SHAO,**

    Plaintiff,

v.

**QUALITY BIOMEDICAL, INC.,**

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW**, Plaintiff, Sharon Shao, by and through her counsel, Baumgartner Law, LLC, and respectfully submits this Complaint and Jury Demand against the above-named Defendant, and alleges and avers as follows:

## I. JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (ADA), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Colo.Rev.Stat. § 34-24-401 *et. seq.* ("CADA"), Colo.Rev.Stat. § 8-13.3-401 *et. Seq*, and common law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(4), 1367, 42 U.S.C. § 2000e-5, and the aforementioned statutory provisions.

3. This Court has personal jurisdiction over Defendant because Defendant's business is in Colorado, Defendant has transacted business in Colorado, and because Defendant's illegal

employment practices were committed in the State of Colorado.

4. Venue is proper in the United States District Court for the District of Colorado under 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are stored in Colorado, Plaintiff worked in Colorado at the time of Defendant's unlawful employment practices, and because Plaintiff would have worked in Colorado if not for Defendant's unlawful employment practices.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has timely invoked and fully exhausted all administrative remedies applicable to this action.

6. Plaintiff timely filed a Charge with the EEOC alleging discrimination on the basis of a protected health condition as well as retaliation in violation of Title VII.

7. The Charge was filed within 300 days of the occurrence of one or more of the alleged unlawful employment practices in violation of 42 U.S.C. § 2000, *et seq*. Plaintiff filed her Charge on October 21, 2021.

8. The EEOC issued a Notice of Right to Sue on April 14, 2022. Plaintiff is filing the current Complaint and Jury Demand within 90 days of receiving the Notice of Right to Sue.

9. Plaintiff also timely filed a complaint with the Colorado Department of Labor and Employment for violation of the Colorado Healthy Families and Workplaces Act (C.R.S. § 8-13.3-401 *et seq*.).

10. The Colorado Department of Labor and Employment issued a Notice of Right to Sue and Exhaustion of Administrative Remedies on November 17, 2021. Plaintiff is filing the current Complaint and Jury Demand no later than two years after the violation occurred.

### III. PARTIES

11. Plaintiff is an individual and currently resides in the State of Colorado. At the time of the incidents that gave rise to this action, Plaintiff was a resident of the State of Colorado.

12. Defendant, Quality Biomedical, Inc., (hereafter referred to as "Defendant") is a for-profit corporation licensed to transact business in the State of Colorado. Defendant's principal office address is 6235 Lookout Rd., Unit B, Boulder, Colorado 80301. Defendant is an employer subject to the provisions of Title VII and CADA.

### IV. GENERAL ALLEGATIONS

13. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

14. On Monday, October 4, 2021, Defendant unlawfully terminated Plaintiff's employment.

15. Plaintiff was the victim of discrimination and retaliation in violation of State and Federal law when she was unlawfully discharged from her employment.

16. Plaintiff was offered employment with Defendant on August 26, 2021. Plaintiff was subsequently employed by Defendant as a staff accountant.

17. Since the date she was hired, Plaintiff was a full-time employee of Defendant. Plaintiff was a hard-working, dependable, valued member of Defendant's staff.

18. As a condition of her hiring with Defendant, Plaintiff was required to be vaccinated against COVID-19 prior to beginning on-site employment.

19. Plaintiff received the Pfizer COVID-19 vaccine on August 31, 2021. This was Plaintiff's first dose of the vaccine.

20. Unfortunately, after receiving the vaccination, Plaintiff became seriously ill and developed

pericarditis, which is an inflammation of the lining of the heart that is caused by the vaccine.

21. Plaintiff received medical treatment in the emergency department at Longmont United Hospital, where she stayed from September 13, 2021, through September 16, 2021.

22. Plaintiff was advised to remain off work until September 20, 2021, by Dr. Cathy O'Neill at Longmont United Hospital.

23. On September 29, 2021, Plaintiff began receiving medical treatment at Colorado Heart & Vascular. Plaintiff's doctors at Colorado Heart & Vascular advised her to remain off work until a full cardiac evaluation was complete.

24. Plaintiff emailed Defendant informing them of her condition and that she would need time off work to receive medical treatment. In response to Plaintiff's request, Defendant's CEO, John Mahoney, explicitly told Plaintiff that she could go on a leave of absence while she received medical treatment and a cardiac evaluation.

25. On October 4, 2021, while Plaintiff was receiving medical care and taking time to recover at the direction of her doctors, she was unceremoniously terminated by Defendant.

26. Defendant terminated Plaintiff's employment for the express reason that she was ill and required medical attention for pericarditis.

27. Defendant made absolutely no attempt to accommodate Plaintiff's health condition, despite the fact Defendant caused Plaintiff to suffer from this condition due to its insistence on her receiving the COVID-19 vaccine.

28. In fact, Plaintiff attempted to work from her bed to show her level of commitment to her work, but she was still terminated even though she was qualified and willing to work with reasonable accommodation.

29. Even though Defendant previously assured Plaintiff to not worry about her job, Plaintiff

4

was discharged. Therefore, the decision to terminate Plaintiff was calculated, deliberate, and especially reprehensible.

30. Plaintiff's termination was done for discriminatory, retaliatory, and unlawful purposes. Defendant discriminated against Plaintiff and retaliated against her on the basis of a protected health condition.

31. Defendant offers a transparently pretextual reason for terminating Ms. Shao's employment: they claim she resigned in an email.

32. After being terminated in response to her email, confused and upset, Plaintiff immediately emailed Defendant indicating there had been a misunderstanding and that she did not intend to resign through her email.

33. Defendant terminated Plaintiff anyway.

34. Plaintiff emailed Defendant and reported feeling undervalued as an employee because Defendant demonstrated no concern for Plaintiff's health. Plaintiff explained that she "made a huge decision to please this company" by receiving the vaccine, but that her employer was unwilling to accommodate her illness and recovery.

35. Despite assuring Plaintiff that her job was safe, Defendant subsequently retracted its promise and terminated Plaintiff due to her health condition.

36. As a direct and proximate result of the Defendant's conduct and breach, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation, and embarrassment; pain and suffering.

## V. CLAIMS FOR RELIEF

### i. FIRST CLAIM FOR RELIEF

*Employment Discrimination in Violation of Americans with Disabilities Act (ADA)*

37. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

38. Plaintiff belongs to a protected class because she is disabled, as defined by the ADA. 42 U.S.C. § 12101 *et seq*.

39. Plaintiff is "disabled" within the meaning of the ADA because she was suffering from a physical impairment that substantially limited her major life activities. While Plaintiff was on bed rest, she was unable to care for herself, was not eating properly, could not walk, stand, lift, or bend due to her need to remain in bed, and had limited ability to communicate and work due to her health condition.

40. Plaintiff is well qualified to perform the essential functions of her job with or without reasonable accommodation. A "qualified" person means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

41. Plaintiff possesses the requisite skill, experience, education, and other job-related requirements of her position.

42. Plaintiff suffered an adverse employment decision despite her qualifications when she was terminated.

43. Based upon a good faith belief, Plaintiff's position was not eliminated after her discharge. Thus, the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination.

44. Defendant, by and through the conduct of its agents and employees, discriminated against Plaintiff by terminating her due to a disability.

45. The effect of Defendant's unlawful employment practices described above has been to deprive Plaintiff of equal employment opportunities, adversely affect her status as an employee, and deprive her of her right to continued employment based on her health status.

46. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation, and embarrassment; pain and suffering.

47. Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

## ii. SECOND CLAIM FOR RELIEF

*Retaliation in violation of Title VII*

48. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

49. The actions of Defendant, its agents and employees constituted discriminatory and unfair employment practices. Plaintiff was terminated on the basis of a disability, and in retaliation for taking a leave of absence for her disability. Plaintiff also suffered disparate treatment discrimination when she was treated differently based on her protected class.

50. Plaintiff was further discriminated against in matters of compensation, terms, conditions,

or privileges of employment when she was subjected to disparate treatment and deprived of employment opportunities consistent with her able-bodied co-workers.

51. To establish a prima facie case of retaliation, the plaintiff must be able to show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016). Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the employer to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. *Id*.

52. When Plaintiff wrote to Defendant informing them of her condition and that she would need time off work to receive medical treatment, Defendant's CEO, John Mahoney, explicitly told Plaintiff that she could go on a leave of absence while she received medical treatment and a cardiac evaluation.

53. Plaintiff engaged in protected opposition to her employer's discrimination when she emailed her employer on October 4, 2021.

54. In that email, Ms. Shao reported feeling undervalued as an employee because her employer demonstrated no concern for the serious illness Plaintiff developed as a result of taking the COVID-19 vaccine. Plaintiff explained that she "made a huge decision to please this company" by receiving the vaccine, but that her employer was unwilling to accommodate her illness and recovery. Thus, when Plaintiff told her employer that she felt her position was in jeopardy due to her health condition, she was engaging in protected opposition to her employer's discriminatory practices.

55. After Plaintiff informed Defendant of her disability, Defendant retaliated against Plaintiff

8

in the form of actual termination.

56. Defendant terminated Plaintiff's employment for the express reason that she was ill and required medical attention for pericarditis.

57. Plaintiff reasonably understood the response from her employer to be a materially adverse decision to her employment.

58. There is a causal connection between the protected activity and the materially adverse employment decision because Plaintiff's disability was the moving force behind her termination.

59. Plaintiff's assertion of her protected rights was the only motivating factor in the retaliatory actions taken by Defendant.

60. The timing of Defendant's termination email, and the fact that it was a direct response to Plaintiff's October 4, 2021, email, indicates a direct relationship between Plaintiff's protected activity and her termination.

61. Defendant's response to the email sent by Plaintiff was entirely inadequate. Defendant made absolutely no attempt to accommodate Plaintiff's health condition, despite the fact Defendant caused Plaintiff to suffer from this condition due to its insistence on her receiving the COVID-19 vaccine.

62. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

63. Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to

punitive damages.

64. Plaintiff is also entitled to recover her reasonable costs and attorney's fees for bringing this action, pursuant to 42 U.S.C. §2000e-5(k).

### iii.  THIRD CLAIM FOR RELIEF

*Employment Discrimination in Violation of C.R.S. § 24-34-401 et. seq. (CADA)*

65. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

66. To establish a prima facie case of disability discrimination, a plaintiff must show: (1) he or she belongs to a protected class; (2) he or she was qualified for the job at issue; (3) he or she suffered an adverse employment decision despite his or her qualifications; and (4) the circumstances give rise to an inference of unlawful discrimination. *St. Croix v. University of Colorado Health Sciences Center*, 166 P.3d 230, 236 (Colo.App. 2007).

67. Plaintiff belongs to a protected class in Colorado because she is disabled, as defined by the ADA. *See* 42 U.S.C. § 12101 *et seq*. While Plaintiff was on bed rest, she was unable to care for herself, was not eating properly, could not walk, stand, lift, or bend due to her need to remain in bed, and had limited ability to communicate and work due to her health condition.

68. Defendant was aware that Plaintiff was suffering from a health condition because Defendant acknowledged it in an email through Defendant's CEO, John Mahoney.

69. Plaintiff possesses the requisite skill, experience, education, and other job-related requirements of her position.

70. In response to Plaintiff reporting her disability, Defendant took adverse employment actions against Plaintiff in the form of actual termination.

71. Based upon a good faith belief, Plaintiff's position was not eliminated after her discharge. Thus, the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination.

72. The adverse employment activity was causally related to Plaintiff's disability.

73. Defendant offered transparently pretextual reasons for the adverse employment actions it took on Plaintiff.

74. Defendant, by and through the conduct of its agents and employees, discriminated against Plaintiff by terminating her due to a disability.

75. The effect of Defendant's unlawful employment practices described above has been to deprive Plaintiff of equal employment opportunities, adversely affect her status as an employee, and deprive her of her right to continued employment based on her health status.

76. As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation, and embarrassment; pain and suffering.

77. Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's State protected rights, thereby subjecting Defendant to punitive damages.

78. Plaintiff is also entitled to recover her reasonable costs and attorney's fees for bringing this action, pursuant to C.R.S. § 24-34-405.

### iv.  FOURTH CLAIM FOR RELIEF

*Violation of Colorado Healthy Families and Workplaces Act, C.R.S. § 8-13.3-401.*

79. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

80. After developing pericarditis, Plaintiff subsequently suffered from a physical illness or health condition that prevented her from working, as documented in her medical records.

81. Pursuant to C.R.S. § 8-13.3-402(2)(a), Plaintiff earned several hours of sick leave in the time she worked for Defendant.

82. Defendant denied Ms. Shao sick leave in violation of C.R.S. § 8-13.3-401 *et seq*.

83. Plaintiff has suffered damages as a direct result of her wrongful and unlawful termination including, but not limited to, loss of income in the past, present and future, loss of expectation, and attorney's fees and costs.

84. Defendant's liability extends to economic damages in an amount equal to the difference between the amount that the employer paid to the complaining employee and the amount that the employee would have received had there been no violation plus liquidated damages in an amount equal to the employee's economic damages and the employee's reasonable costs, including attorney fees. C.R.S. § 8-5-104(1)(a) and (b). In addition, the employer is liable for back pay. C.R.S. § 8-13.3-411(4)(b)(I).

### v.  FIFTH CLAIM FOR RELIEF

*Promissory Estoppel*

85. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

86. The elements of a promissory estoppel claim in employment situations are: (1) a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) action or forbearance induced by that promise; and (3) the existence of circumstances such that injustice can be avoided only by enforcement of the promise. *Chidester v. E. Gas & Fuel Assocs.*, 859 P.2d 222, 224-25 (Colo. App. 1992).

87. Defendant promised Plaintiff that she could go on a leave of absence while she received medical treatment and a cardiac evaluation, and, in turn, promised not to terminate Plaintiff's employment as a result of the need to seek medical treatment.

88. Defendant should reasonably have expected that, based on this promise, Plaintiff would continue to seek medical treatment expecting to retain her employment after her medical treatment was completed.

89. Plaintiff reasonably and justifiably relied upon Defendant's promise and sought continued medical treatment for her health condition. Plaintiff reasonably and justifiably expected that her employment would not be terminated as a consequence of seeking medical treatment because she was explicitly promised the same.

90. Under these circumstances, injustice can only be avoided by enforcement of Defendant's promise to continue Plaintiff's employment in spite of his need for medical treatment.

91. Asa direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. All declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages, including but not limited to, unpaid minimum wages, unpaid overtime, unpaid vacation, back pay, font pay, and lost benefits, as established at trial;

c. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law, in an amount to be determined at trial;

e. Prejudgment and post-judgment interest at the highest lawful rate;

f. Attorneys' fees and costs; and

g. Any further relief the Honorable court deems just and proper.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 1st day of July, 2022.

Respectfully submitted,
**BAUMGARTNER LAW, L.L.C.**
*Original signature on file at Baumgartner Law, L.L.C.*


 *s/ Sean M. Simeson*
Sean M. Simeson
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (303) 529-3476
Fax: (720) 634-1018
sean@baumgartnerlaw.com

Plaintiff's Address:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113